UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| KALI TREE TOP, AS ADMINISTRATOR OF THE ESTATE OF CATHERINE MINER, DECEASED, AND INDIVIDUALLY AS A SURVIVOR; AND ESTATE OF CATHERINE MINER,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 5:19-CV-05068-JLV<br><br>ORDER DENYING PLAINTIFF'S MOTION TO COMPEL<br><br>Docket No. 22 |

**INTRODUCTION**

This matter is pending before the court on plaintiff Kali Tree Top's complaint against the United States of America ("government") pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 et seq. Docket No. 1. Ms. Tree Top appears as administrator of the estate of her mother, Catherine Miner, deceased, who is alleged to have received negligent medical care from the government's employee(s). Id. Ms. Tree Top has now filed a motion to compel discovery from the government. Docket No. 22. The government resists the motion. Docket No. 27.

## FACTS

The facts which are pertinent to the instant motion to compel are as follows. Further facts are incorporated in the discussion section below. The parties had their discovery conference on February 7 and 18, 2020. Docket No. 13 at p. 1, ¶ 1. They agreed to exchange initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) by April 3, 2020. Id. at p. 5, ¶ 10.

The government has produced to Ms. Tree Top several documents, both electronically and in paper. Ms. Tree Top objects that the government's production of initial disclosures is incomplete or improper and moves to compel further production of documents. The government asserts that it has fulfilled its duty to make initial disclosures and, indeed, has gone beyond that duty. Ms. Tree Top has never served the government with any interrogatories, requests for the production of documents, requests to admit, or any other discovery requests. Therefore, Ms. Tree Top's motion is based solely on the government's duty to make initial voluntary disclosures. The individual categories of documents at issue are described below.

## DISCUSSION

**A.     Scope of Duty to Make Initial Disclosures**

In federal court, the parties have a duty to voluntarily turn over certain discovery at the beginning of a case without the necessity of the opposing party serving them with discovery requests. FED. R. CIV. P. 26(a)(1). These are what are known as the parties' "initial disclosures." Id. Rule 26 sets forth four categories of discovery that are encompassed by a party's initial disclosures:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered, and
>
> (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

See FED. R. CIV. P. 26(a)(1)(A). Unless otherwise ordered by the court, "all disclosures under Rule 26(a) must be in writing, signed, and served."[1] See FED. R. CIV. P. 26(a)(4).

Paragraphs (iii) and (iv) do not apply to the government in this matter because the government is not claiming damages in this action, and it has no insurance that might apply to cover part or all of plaintiff's damages. Docket

---

[1] The court rejects the government's assertion that only formal discovery requests need to be signed and that initial disclosures need not be signed. See Docket No. 27 at p. 9 (relying on Rule 26(g)). Initial disclosures are "disclosures under Rule 26(a)" and therefore Rule 26(a)(4) requires that they be in signed. The court agrees, however, that documents produced pursuant to an informal request rather than pursuant to a request under Rule 26 or Rule 34 need not be signed.

Nos. 11 (government answer) and 13 at p. 2, ¶ 3 (government has no insurance).  The court notes that categories (i) and (ii), which *are* applicable to the government, are qualified by the phrase "that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  See FED. R. CIV. P. 26(a)(1)(A)(i) and (ii).  Thus, the government need not disclose *every* name or document which is relevant to *the case as a whole*.  Id.  The government is limited to disclosing names and documents which the government may use to support its defenses.  Id.

With the above guidelines in mind, the court turns to Ms. Tree Top's individual points of contention.

**B.     Application of the Law to Ms. Tree Top's Motion**

    **1.     Copies of medical records and x-rays**

On the due date for initial disclosures, the government contacted plaintiff's counsel and explained that, due to the pandemic, it would not be able to provide paper copies of Ms. Miner's medical records on that date.  The government inquired whether it could have an extension of time to provide "hard" copies of those documents.  Alternatively, the government inquired whether it could provide these documents electronically through a cloud-sharing program.  Docket No. 26-1

Plaintiff's counsel agreed to an extension of time and asked for *both* hard copies and cloud-sharing.  Docket No. 26-5.

Plaintiff served its initial disclosures on the government via email on April 3, 2020, and her attorney indicated he had complete copies of Ms. Miner's

medical records including imaging documents.  Docket No. 26-2.  Plaintiff did not produce copies of these documents for the government because plaintiff had already submitted them to the Indian Health Service ("IHS") through the administrative claims process.  Id.  Plaintiff's counsel did not sign this initial disclosure.  Id.

The government served its initial disclosures via email also on April 3, 2020.  Docket No. 26-6.  Those disclosures are signed electronically by government counsel.  Id. at p. 2.  Consistent with earlier conversation between counsel, the government represented it had requested the Cheyenne River Health Center to produce all medical records in its possession, including imaging and chart notes, related to Ms. Miner from January 2010 through May 2017.  Id.  Further, the government represented it had not received those medical records yet, but that the government would provide paper copies of the records as well as provide them via a cloud-sharing platform.  Id.

On June 7, 2020, plaintiff's counsel inquired about the status of the government's production of Ms. Miner's electronic and paper medical records.  Docket No. 26-7.  The government responded it was still attempting to obtain the records in question, but the pandemic was complicating the matter.  Docket No. 26-8.  Government counsel acknowledged that both the government and Ms. Tree Top had what were thought to be complete sets of Ms. Miner's medical records, but that the government was making a separate request to the health center so that both plaintiff and the government could compare what

5

they already had against what the health center produced to ensure each party had complete records.  Id.

On June 26, 2020, in a signed pleading, the government supplemented its initial disclosures by disclosing approximately 1,500 pages of Ms. Miner's medical records and 50 pages of non-privileged communications from the administrative file.  Docket No. 26-12.  Those documents were provided in electronic form to plaintiff's counsel.  Id.; Docket No. 26-25 at pp. 1-2.  In its supplemental disclosures, the government also disclosed four x-rays from June 24, 2015; October 9, 2016; May 7, 2017; and May 7, 2017; which were not produced because they were already in plaintiff's possession.  Docket No. 26-12.

The documents provided electronically on June 26, 2020, were physically delivered in hard copy form to plaintiff's counsel via Fed Ex on August 27, 2020.  Docket No. 26-23.  The cloud sharing platform was never set up because plaintiff's counsel never responded to the government's overtures to try to get it set up.  Docket No. 26-25.  An additional approximately 200 pages of patient visit reports from August 2016 to May 2017 were provided on September 30, 2020.  Docket No. 26-31.

The government took it upon itself to obtain and pay for Ms. Miner's records from third party Monument Health Rapid City Clinic.  Approximately 150 pages of Monument Health records were provided to plaintiff's counsel on December 3, 2020.  Docket No. 26-34 at p. 1.

When plaintiff's counsel objected that some of the supplemental initial disclosures had not been signed by government counsel, the government provided a new initial disclosure document listing everything that had been provided by the government up to that date and signed by counsel on February 11, 2021. Docket No. 26-34. That document was accompanied by a CD containing the four x-rays disclosed in the government's initial disclosures dated June 26, 2020. Id.

The government's production of Ms. Miner's medical records satisfies the government's obligations under Rule 26(a). It has provided in both electronic and paper form all of Ms. Miner's medical records, including imaging records such as x-rays and records from third-party Monument Health. Furthermore, the government's omnibus February 11, 2021, disclosure satisfied the requirement that the initial disclosures be signed by government counsel. The court denies plaintiff's motion to compel as to Ms. Miner's medical records.

### 2.   **Privileged Documents**

On June 26, 2020, when the government supplemented its initial disclosures, it also produced a privilege log as to 26 letters and documents that were withheld based on either attorney-client privilege or attorney work product doctrine. Docket No. 26-17. The government's log identifies the date, author, and recipient of each document as well as a brief description of what the document is and what privilege is asserted as to that document. Id. These documents all pre-date the filing of Ms. Tree Top's complaint in this court except three. The court infers that, except for these three documents, the

remaining documents are related to evaluation of plaintiff's claim at the administrative level.

Ms. Tree Top asserts the government's privilege log is inadequate. Rule 26(b)(5) requires that a party asserting a claim of privilege must expressly make the claim and must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." See FED. R. CIV. P. 26(b)(5)(A).

The government's privilege log satisfies the requirements of Rule 26(b)(5). For example, a July 30, 2018, letter from a Health and Human Services lawyer to the FTCA Coordinator for the Great Plains Area IHS is described as correspondence regarding plaintiff's administrative claim. Docket No. 26-17 at p. 3. The privileges asserted are attorney-client and work product. Id. This is sufficient for the court to assess the claim of privilege. It is noted plaintiff does not assert the claim of privilege is misplaced, only that the privilege log is inadequate.

Similarly, an August 20, 2018, narrative response to plaintiff's administrative claim prepared at the direction of counsel by a registered nurse and sent to the Health and Human Services department is claimed as attorney-client privileged and work product. Id. This description is sufficient for the court to assess the claim of privilege. The court denies plaintiff's motion to compel on the grounds that the government's privilege log is inadequate.

8

3. **"Fake" email**

Ms. Tree Top alleges the government provided a partial email as part of its initial disclosures and represented it was a true and correct complete copy. Plaintiff also alleges this email has been altered.

The email string in question is between Ms. Tree Top's counsel and a paralegal for the government that covers the period August 23, 2018, to September 6, 2018, during the administrative period of this claim.[2] Docket No. 26-4. The subject of all the emails are plaintiff's counsel's attempts to send to the government's paralegal Ms. Miner's medical records. Id. Plaintiff's counsel appeared to have technical difficulties and sought advice about how best to convey electronic medical records to the agency for the administrative claim. Id. Eventually, a combination of paper records and CDs were sent by plaintiff's counsel to the government's paralegal via United Parcel Service and the paralegal subsequently confirmed receipt of those records and success in opening the CDs. Id.

Plaintiff's counsel had a complete copy of the email string all along, but he pointed out to the government that the document it had provided to him was only part of the email string. The government then responded by finding and sending to plaintiff's counsel the complete email string. Docket No. 26-24. Furthermore, although the print font, spacing, and style is different in different

---

[2] Under the FTCA, a claimant is required to first submit a claim to the appropriate federal agency. 28 U.S.C. 2675(a). The agency can evaluate the claim and chose to pay it during the administrative proceedings. If the agency denies the claim or takes no action within six months, then the claimant can file suit in federal district court. Id.

9

print-outs of the email, the content is the same in all.  Compare Docket No. 26-14, with Docket No. 26-15.

This information is irrelevant to the issue of whether a government employee was negligent and whether that negligence was the proximate cause of injury to Ms. Miner.  An agency's disposition of a claim is not competent evidence of either the government's liability or the plaintiff's damages.  28 U.S.C. § 2675(c).  The focus of the evidence at trial is whether the government's employee(s) were negligent and, if so, whether that negligence was the proximate cause of Ms. Miner's injuries.  28 U.S.C. § 1346(b)(1).

The agency's investigation of plaintiff's administrative claim—whether that investigation was good, bad, or indifferent—is simply irrelevant to the issues in this lawsuit.  Id.  The government need not have produced this email at all because it is not relevant to the government's claims or defenses.  See FED. R. CIV. P. 26(a)(1)(A).  The court denies plaintiff's motion to compel as to the provision of a "fake" email.

### 4. Metadata

The metadata plaintiff sought was sent to plaintiff's counsel on September 17, 2020.  Docket Nos. 26-10 & 26-27.  Plaintiff's counsel then additionally requested information on who accessed Ms. Miner's records electronically and when; a special report was run showing that information and it was provided to plaintiff's counsel on September 22, 2020.  Docket. No. 26-29.  It is not clear exactly why plaintiff is still objecting or, if she is, what that objection is.

The provision of metadata is not a given in any case. Metadata is "data about data." *Sedona Principles*, Commt. 12a, pp. 185-86 (2d ed. 2007). It is information about a particular electronic file which describes how, when, and by whom it was collected, created, accessed, or modified and how it is formatted, including data demographics such as size, location, storage requirements and media information. Id. Metadata includes the contextual, processing, and use information needed to identify and certify the scope, authenticity, and integrity of active or archival electronic information or records. Id. Such information can include the file name, file location, file format, file type, file size, creation date, date of last modification, date of last access, date of last metadata modification, and who is allowed to read, write, and run the file. Id. Metadata is hidden and not readily visible. Id. at Commt. 12a, p. 185.

Here, the parties' discovery plan required only that electronically stored information be provided on a Compact Disc (CD/DVD) either as a Portable Document Format (PDF) or Eclipse with viewer. Docket No. 13 at p. 5. The parties did not require that a party produce electronic discovery in a form that preserves metadata. Id. In fact, converting a native document to PDF *scrubs* the document of metadata, so it could be said the parties stipulated that they *did not* have to provide metadata when they stipulated to production in PDF format. *Sedona Principles*, Commt. 12a, p. 186; Diesel Machinery, Inc. v. Manitowoc Crane, Inc., 4:09-cv-04087-RAL, 2011 WL 677458, at *3 (D.S.D. Feb. 16, 2011) (difference between production of ESI in native format as

opposed to PDF is that metadata is scrubbed from the latter, but not the former).  Where parties stipulated to producing documents in PDF format, the court held metadata did not have to be produced.  Diesel Machinery, Inc., 2011 WL 677458, at *3.

Rule 34 on the production of documents does not specifically address whether metadata must be produced in the usual case.  See FED. R. CIV. P. 34.  There are several cases noting an emerging presumption *against* requiring the production of metadata.  ADT Security Servs., Inc. v. Swenson, Civ. No. 07-2983 (JRT/AJB), 2009 WL 10690407, at *2 (D. Minn. July 23, 2009); Wyeth v. Impax Labs., Inc., 248 F.R.D. 169, 171 (D. Del. 2006); Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640, 645-47 (D. Kan. 2005).

Under these circumstances, the court declines to hold whether the government was required to produce metadata as part of its initial disclosures.  Although the parties stipulated to produce documents in PDF format, they also agreed such production could be in Eclipse.  The court does not know whether production of documents in Eclipse would preserve metadata.

The law is uncertain, but indications are the consensus would be against a requirement of producing metadata without a showing of special need for it.  In any event, the government did provide metadata to plaintiff.  Plaintiff fails to explain why that production is insufficient or incomplete.

Plaintiff additionally points to federal regulations under the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 (HIPAA), and emphasizes that those regulations give patients the right to have

access to the metadata associated with their medical records. Docket No. 30 at p. 9 (citing 45 C.F.R. § 164.524). The cited regulation does *not* explicitly provide that a patient has a right to the metadata associated with her medical records, although there is provision for accessing the records in electronic form if that is how they are kept. 45 C.F.R. § 164.524(c)(2)(ii).

In addition, here, the patient is Ms. Miner, and it is not Ms. Miner making the request for the records. Instead, it is the administrator of Ms. Miner's estate seeking the records through her counsel. Plaintiff has made no showing that an administrator of a deceased person's estate has a right under HIPAA to request the deceased's metadata associated with the deceased's electronic medical records. The court denies plaintiff's motion to compel further metadata as a component of the government's initial disclosures.

### 5. Name of Reviewing Doctor

Plaintiff seeks to compel, under the umbrella of the initial disclosure requirement, the name of the doctor who reviewed plaintiff's administrative claim. As discussed above, how the agency handled plaintiff's administrative claim is irrelevant. What happened at the administrative level is significant only for purposes of determining whether plaintiff properly exhausted by presenting her claim to the agency first. 28 U.S.C. § 2675(b). In this lawsuit in this court, the focus is now on whether the government's employee(s) were negligent and whether that negligence proximately caused Ms. Miner's injuries. Because the information sought is irrelevant, it is not relevant to the

government's claims or defenses and, accordingly, the government has no duty to disclose that information under Rule 26(a)(1)(A).

In addition, the government has resisted disclosure of the doctor who reviewed plaintiff's claim at the agency level under Rule 26(b)(4)(D). That rule provides that experts who are employed only for trial preparation or in anticipation of trial and who are not going to be called as a witness at trial may not have their opinions or the facts relied upon in forming those opinions discovered. See FED. R. CIV. P. 26(b)(4)(D). The court agrees. Unless the government determines it will call this individual as a witness at trial, or unless plaintiff can show one of the exceptions to the rule apply (see subparts (D)(i) and (ii)), the discovery is not permissible. It is certainly not required as part of the government's initial disclosures.

## CONCLUSION

The court reiterates that Ms. Tree Top has not served the government with formal requests for discovery. Her motion is premised only on the requirement of initial disclosures under Rule 26(a)(1)(A). The government met its obligations to provide documents relevant to its claims and defenses as required by Rule 26(a)(1)(A). Nothing that was provided was improper or incomplete. In many instances, the government went beyond what was strictly required by Rule 26(a)(1)(A) and provided additional documents simply because plaintiff's counsel made an informal request for them.

If there are other matters plaintiff wishes to discover, she should avail herself of the other tools available for formal discovery requests under the civil

procedure rules. The government, of course, is under a continuing obligation to update its initial disclosures if new information comes to light—an obligation that rests equally upon the plaintiff. It is therefore

ORDERED that plaintiff's motion to compel [Docket No. 22] is denied in its entirety. Plaintiff's several requests for sanctions for alleged discovery abuses are also denied as the court has discovered no such abuses on the part of the government.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 15th day of September, 2021.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge